EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Comisionado de Seguros de Puerto Rico<br><br>        Peticionario<br><br>              v.<br><br>Triple-S Salud, Inc.<br><br>        Recurrida | Certiorari<br><br>2014 TSPR 104<br><br>191 DPR ____ |

Número del Caso: CC-2013-873

Fecha: 5 de septiembre de 2014

Tribunal de Apelaciones:

        Panel integrado por su presidente, el Juez Rivera Román, la Juez Colom García y el Juez Vizcarrondo Irizarry

Oficina de la Procuradora General:

        Lcda. Margarita Mercado Echegaray
        Procuradora General

        Lcda. María Umpierre Pagán
        Procuradora General Auxiliar

Abogados de la Parte Recurrida:

        Lcdo. César T. Alcover
        Lcda. Diana Pérez Seda

Materia: Sentencia con Opinión de Conformidad y Opinión

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Comisionado de Seguros de
Puerto Rico

       Peticionario

         v.               CC-2013-873

Triple-S Salud, Inc.

       Recurrida

SENTENCIA

En San Juan, Puerto Rico, a 5 de septiembre de 2014.

Luego de analizar con detenimiento el expediente de este caso y los escritos de las partes, revocamos la determinación del Tribunal de Apelaciones y confirmamos la decisión administrativa. La multa de $10,000 que impuso la OCS a Triple-S está justificada por la evidencia sustancial que obra en el expediente administrativo.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió una Opinión de Conformidad a la cual se unió el Juez Asociado señor Feliberti Cintrón. El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente a la cual se unieron la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Rivera García.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Comisionado de Seguros de
Puerto Rico

     Peticionario

       v.                    CC-2013-873

Triple-S Salud, Inc.

     Recurrida

Opinión de Conformidad emitida por el Juez Asociado señor MARTÍNEZ TORRES a la que se unió el Juez Asociado señor Feliberti Cintrón.

En San Juan, Puerto Rico, a 5 de septiembre de 2014.

El Tribunal de Apelaciones utilizó el principio de proporcionalidad de la sanción como escrutinio de revisión judicial en la decisión administrativa que nos ocupa. Ese principio ha sido rechazado consistentemente por este Tribunal. Véanse, Com. Seg. P.R. v. Antilles Ins. Co., 145 DPR 226, 233-234 (1998), reafirmado en Comisionado de Seguros v. PRIA, 168 DPR 659, 667-668 (2006). En esa jurisprudencia reconocimos la discreción que tienen las agencias administrativas al momento de seleccionar las medidas que les ayuden a cumplir los objetivos de las leyes cuya administración e **implantación se les ha delegado. A tenor con lo**

resuelto en esos casos, ausente un abuso de discreción, procede revocar al Tribunal de Apelaciones y confirmar la decisión administrativa. Por eso estoy conforme con la Sentencia que hoy emite este Foro.

I

El 30 de junio de 2009, el Hospital del Maestro presentó ante la Oficina del Comisionado de Seguros (OCS) una reclamación en contra de Triple-S por su incumplimiento con el pago de un servicio de salud (procedimiento 0272-19499), prestado el 17 de julio de 2008, a la paciente asegurada Yolanda Rodríguez Colón.

En esa solicitud, el Hospital del Maestro indicó que la señora Rodríguez Colón recibió unos servicios en la institución hospitalaria el 17 de julio de 2008, y que se le facturó electrónicamente al plan en septiembre de 2008. Señaló que el plan emitió un pago parcial el 26 de septiembre de 2008, pero dejó al descubierto parte de la cuenta. El 6 de octubre de 2008, se presentó nuevamente a Triple-S la factura, pero no hubo contestación.

El 22 de octubre de 2009, la OCS notificó a Triple-S de la solicitud de intervención y requirió que en el término de quince días, le sometiera evidencia del pago del procedimiento 272-19499, así como copia de la contestación a la querella presentada por el Hospital del Maestro. En esa carta, también se apercibió a Triple-S que no contestar en el término indicado constituiría una obstrucción al poder de investigación que tiene el Comisionado de Seguros.

El 27 de octubre de 2009, Triple-S presentó ante la OCS una moción en la que solicitó el formulario de solicitud de intervención y cualquier prueba documental que obrara en el expediente. Así también, requirió que una vez se proveyera lo solicitado, se concediera un nuevo término para contestar la carta. El 2 de marzo de 2010, tras haber transcurrido el término de quince días y sin que la OCS le concediera un término adicional, Triple-S solicitó el cierre y el archivo de la investigación, pues no se le habían suministrado los documentos solicitados. La OCS le notificó a Triple-S que no habían sometido la información solicitada y le concedió hasta el 28 de junio de 2010 para así hacerlo. El 30 de junio de 2010, Triple-S presentó su contestación e indicó que ya había provisto lo requerido el 2 de marzo de 2010.

Luego de realizar la investigación correspondiente, la OCS emitió una orden en la cual imputó a Triple-S haber incurrido en violaciones de los Arts. 2.130, 30.030 y 30.070 del Código de Seguros de Puerto Rico, 26 LPRA secs. 245, 3002 y 3006, así como de los Arts. 4, 8 y 11 de la Regla Núm. 73 del Reglamento Núm. 6559, según enmendado, conocido como Normas para regular el pago puntual de reclamaciones a los proveedores de Salud y del Art. 6 de la Regla I-A del Reglamento Núm. 5266 de 3 de julio de 1995, conocido como el Reglamento del Código de Seguros. Las violaciones consistieron en que, alegadamente, Triple-S: (1) no presentó evidencia del pago de la reclamación ni de los intereses legales correspondientes, según fue

requerida por la OCS en dos ocasiones; (2) no pagó el servicio prestado por el Hospital con un costo de $348 (procedimiento 0272-19499), ni los intereses legales; y (3) no contestó la querella que le presentó el Hospital del Maestro en el término dispuesto para ello. En virtud de lo anterior, la OCS impuso a Triple-S una multa administrativa de $10,000 y le ordenó pagar el servicio no pagado, junto con los intereses legales correspondientes.

Inconforme, Triple-S solicitó una vista administrativa, la cual, luego de varios incidentes procesales, se celebró. En esa vista, las partes presentaron amplia prueba documental. También, la OCS presentó el testimonio de la Sra. Inarvis Bonilla Vélez, quien es Analista de Reclamaciones de la Unidad de Pago Puntual de la OCS y Triple-S presentó el testimonio de la Sra. Virginia Rivera Carrión, quien es la supervisora de su Departamento de Relaciones Profesionales.

En virtud de esos hechos, la OCS confirmó la Orden emitida junto con la multa administrativa impuesta de $10,000. Triple-S presentó una reconsideración, que se declaró no ha lugar.

En desacuerdo, Triple-S presentó un recurso de revisión administrativa ante el Tribunal de Apelaciones. Sostuvo que la OCS erró al determinar que Triple-S no objetó ni notificó como no procesable la reclamación del procedimiento 0272-19499, pues del expediente surgía la evidencia de esa notificación. Por último, argumentó que la OCS violó su debido proceso de ley sustantivo, al

imponerle una multa desproporcionada e irrazonable en comparación con las faltas alegadas.

Posteriormente, la OCS presentó su oposición. Señaló que de la prueba vertida en el juicio surgía claramente que Triple-S no notificó al Hospital su objeción respecto a la reclamación del procedimiento 0272-19499. Añadió que la multa no era desproporcionada, pues a Triple-S no se le sancionó por una sola falta, sino por múltiples violaciones al Código de Seguros y a su Reglamento.

Luego de varios incidentes procesales, el Tribunal de Apelaciones notificó una sentencia en la que confirmó la resolución recurrida, inclusive la multa. Resolvió que Triple-S había cometido las violaciones al Código de Seguros y a su Reglamento, que le fueron imputadas por la OCS. En consecuencia, determinó que la OCS estaba facultada para imponer la multa de $10,000 y que dicha imposición no fue ilegal, irrazonable o arbitraria.

El 21 de junio de 2013, Triple-S presentó una moción de reconsideración. Arguyó que la multa era desproporcionada e irrazonable, porque era 29 veces mayor a la cuantía de la falta cometida. En su consecuencia, solicitó que se modificara la sentencia y que se atemperara la multa impuesta para que su cuantía guarde proporción a las faltas incurridas por Triple-S.

El Tribunal de Apelaciones reconsideró y redujo la multa de $10,000 a $1,000, para que reflejara "la proporcionalidad equitativa" a la falta incurrida y se evitara una "injusticia".

Inconforme, la OCS presentó una solicitud de _certiorari_ ante este Tribunal, en la que señaló que el foro apelativo intermedio erró al sustituir el criterio de la OCS por el suyo y reducir la multa administrativa impuesta a Triple-S por varias infracciones al Código de Seguros y su Reglamento. También expresó que el Tribunal de Apelaciones incidió al no brindarle deferencia a la determinación administrativa respecto a la multa impuesta, haciendo completa abstracción de los precedentes judiciales en torno al alcance de la revisión judicial de las determinaciones administrativas mediante la cual se imponen sanciones.

El 28 de febrero de 2014, emitimos una Resolución en la que ordenamos a Triple-S mostrar causa por la cual no se debía revocar el dictamen recurrido. Nuestra orden se cumplió. Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

Nuestro derecho administrativo reconoce que los dictámenes de los organismos administrativos merecen la mayor deferencia judicial. _OCS v. Universal_, 187 DPR 164, 179 (2012); _The Sembler Co. v. Mun. de Carolina_, 185 DPR 800, 821 (2012); _Torres Santiago v. Depto. Justicia_, 181 DPR 969, 1002 (2011); _Vélez v. A.R.Pe._, 167 DPR 684, 693 (2006). Esos procesos están cobijados por una presunción de regularidad y corrección. _Íd._; _Henríquez v. Consejo de Educación Superior_, 120 DPR 194, 210 (1987). Por eso, la revisión judicial se circunscribe a determinar si la

actuación de la agencia es arbitraria, ilegal o irrazonable. O.E.G. v. Rodríguez, 159 DPR 98, 119 (2003).

Las conclusiones de derecho serán revisables en todos sus aspectos. Sec. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 2175. Ahora bien, los tribunales no deben descartar livianamente las conclusiones de derecho hechas por las agencias administrativas. Torres Santiago v. Depto. Justicia, supra, págs. 1002-1003. Por el contrario, **deben dar gran peso y deferencia a las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos que administran**. Asoc. Fcias. v. Caribe Specialty et al. II, 179 DPR 923, 940 (2010); Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).

La deferencia que se reconoce a las decisiones de las agencias administrativas cederá cuando no se fundamente en evidencia sustancial, cuando la agencia se equivoque en la aplicación de una ley o cuando la actuación sea arbitraria, irrazonable o ilegal. OCS v. Universal, supra, pág. 179.

Este Tribunal en Com. Seg. P.R. v. Antilles Ins. Co., 145 DPR 226, 233-234 (1998), **rechazó expresamente** adoptar en nuestra jurisdicción el principio de proporcionalidad como escrutinio en revisión judicial de las decisiones administrativas. Véase, además, Comisionado de Seguros v. PRIA, supra, págs. 667-668. Mencionamos en particular:

Respecto a la revisión de la facultad de imponer sanciones, los tribunales también le han reconocido mucha discreción a las agencias administrativas en la selección de las medidas que le ayuden a cumplir los objetivos de las leyes cuya administración e implantación se les ha delegado, siempre que actúen dentro del marco de su conocimiento especializado y de la ley. **En estos casos la revisión judicial no será para determinar si la sanción impuesta guarda proporción con la conducta por la cual se impone la sanción ni si la sanción es demasiado fuerte.** Esta evaluación corresponde hacerla a la propia agencia, quien por su experiencia especializada es quien está en la mejor posición para conocer los efectos de una violación a los intereses protegidos y cuya agencia, al mismo tiempo, asegura cierto grado de uniformidad y coherencia en la imposición de sanciones. Kulkin v. Bergland, 626 F.2d 181 (1er Cir. 1980). En estos casos, la revisión judicial se limitará a evitar que las agencias actúen en forma ilegal, arbitraria, en exceso de lo permitido por ley o en ausencia de evidencia sustancial que justifique la medida impuesta, de modo que se evidencie una actuación caprichosa o en un abuso de discreción por parte de la agencia. Com. Seg. P.R. v. Antilles Ins. Co., supra, págs. 233-234. (Énfasis nuestro y nota al calce omitida). Véase, además, D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Colombia, Ed. Forum, 2013, pág. 98.

Lo que resolvimos en Com. Seg. P.R. v. Antilles Ins. Co., supra, reafirmado en Comisionado de Seguros v. PRIA, supra, no significa que estamos impedidos de intervenir cuando una multa es irrazonable. Como menciona el Prof. Demetrio Fernández en su tratado, op cit., pág. 109:

El criterio de la razonabilidad de la multa es fundamental para que en revisión se reconozca la validez de la acción tomada. **Su imposición se examina en revisión como parte de la amplia discreción que los tribunales han destacado que los organismos administrativos gozan en la selección de las medidas para cumplir con el fin de la legislación.** (Énfasis suplido.)

En fin, hemos expresado de manera consecuente que los tribunales no pueden descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de esta por el propio. _Torres Santiago v. Depto. Justicia_, _supra_, pág. 1003; _Martínez v. Rosado_, 165 DPR 582, 589 (2005); _P.R.T.C. v. J. Reg. Tel. de P.R._, 151 DPR 269, 282 (2000). "Aun en casos marginales o dudosos en que la interpretación de la agencia no sea la única razonable, la determinación de la agencia merece deferencia sustancial". _Torres Santiago v. Depto. Justicia_, _supra_, pág. 1003. Véase, además, _De Jesús v. Depto. Servicios Sociales_, 123 DPR 407, 417-418 (1989).

### III

El Tribunal de Apelaciones en su dictamen analizó _de novo_ la proporcionalidad entre la sanción administrativa impuesta y la conducta sancionada. Esa actuación es contraria a lo que resolvimos en _Com. Seg. P.R. v. Antilles Ins. Co._, _supra_, reafirmado en _Comisionado de Seguros v. PRIA_, _supra_. En esas decisiones expresamos diáfanamente que la revisión judicial no es para determinar si la sanción impuesta guarda proporción con la conducta sancionada. También indicamos que los foros administrativos merecen deferencia en la ejecución de las leyes y reglamentos cuya administración e implantación **se les ha delegado**. Precisamente, la decisión del Tribunal de Apelaciones hizo caso omiso a la doctrina de la delegación de poderes a los entes administrativos. _Sánchez et al. v. Depto. Vivienda et al._, 184 DPR 95, 119-122 (2011). Como

mencionamos en <u>Luce & Co., v. Junta Salario Mínimo</u>, 62 DPR

452, 464 (1943):

> el mundo moderno se caracteriza por la gran complejidad en las relaciones sociales y económicas de las personas, conjuntamente con la progresiva supervisión gubernativa sobre la conducta individual, y ello implica que la legislatura está imposibilitada de anticipar legislativamente, en forma detallada, minuciosa o específica, la multiplicidad de situaciones que puedan surgir de esas relaciones complejas, siendo suficiente el que la ley en cuestión señale o establezca normas amplias y generales **que sirvan de guía o dirección a entidades administrativas expertas, para que éstas, con su experiencia y conocimientos especiales, apliquen esas normas concretamente a los hechos que puedan surgir y ultimen los detalles que implementen la política general legislativa.** (Énfasis nuestro.)

En este caso no puede haber duda de que es la OCS y

no la Rama Judicial quien tiene el peritaje para regular

la extensa y compleja reglamentación en el campo de

seguros. Así lo hemos reconocido **por varias décadas**.

<u>Jiménez López et al. v. SIMED</u>, <u>supra</u>; <u>Comisionado de

Seguros v. PRIA</u>, <u>supra</u>; <u>Com. Seg. P.R. v. Antilles Ins.

Co.</u>, <u>supra</u>; <u>Comisionado de Seguros v. Bradley</u>, 98 DPR 21,

29 (1969); <u>Comisionado de Seguros v. Anglo Porto Rican</u>, 97

DPR 637 (1969); <u>Maryland Cas'y Co. v. San Juan Rac'g

Assoc., Inc.</u>, 83 DPR 559, 563 (1961).

Hemos indicado que la industria de seguros "está

revestida de un gran interés público debido a su

importancia, complejidad y efecto en la economía y la

sociedad". <u>Jiménez López et al. v. SIMED</u>, 180 DPR 1, 8

(2010). Véanse, además, <u>S.L.G. Francis-Acevedo v. SIMED</u>,

176 DPR 372 (2009); <u>Echandi Otero v. Steward Title</u>, 174

DPR 355 (2008); Com. Seg. P.R. v. Antilles Ins. Co., supra, pág. 446. Por ello, el negocio de seguros es reglamentado extensamente por el Estado mediante la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el Código de Seguros de Puerto Rico, 26 LPRA sec. 101 et seq. En nuestro ordenamiento, **la Asamblea Legislativa le ha delegado a la OCS el poder de fiscalizar y reglamentar la industria de seguros, además de velar por el cumplimiento de las disposiciones del Código de Seguros de Puerto Rico**. Art. 2.030 del Código de Seguros, 26 LPRA sec. 203. Véanse, además, Jiménez López et al. v. SIMED, supra, pág. 8; R. Cruz, Derecho de Seguros, San Juan, Ed. JTS, 1999, pág. 1.

Conforme con nuestra jurisprudencia, solo podemos revocar la decisión de la OCS si hubo un error en la aplicación de una ley o cuando la actuación sea arbitraria o irrazonable. OCS v. Universal, supra, pág. 179. Aquí la multa de $10,000 impuesta a Triple-S no se excedió de lo permitido por ley. Véanse, Art. 2.130 del Código de Seguros, 26 LPRA sec. 245, ("[t]oda persona que obstruya, ayude o contribuya a la obstrucción, dilación o entorpecimiento de la investigación podrá ser sancionada con una multa administrativa no menor de quinientos dólares ($500) ni mayor de diez mil dólares ($10,000)"); Art. 2.250 del Código de Seguros, 26 LPRA sec. 257, ("violaciones a las disposiciones de este Código... están sujetas a una multa administrativa no menor de quinientos dólares ($500) ni mayor de diez mil dólares ($10,000) por

cada violación"). En este caso Triple-S no violó una, sino varias disposiciones legales. Arts. 2.130, 30.030 y 30.070 del Código de Seguros, supra; Arts. 4, 8, y 11 de la Regla Núm. 73, supra; y Art. 6 de la Regla I-A. supra. No se puede concluir con rigor que la OCS erró al interpretar la ley. La OCS tenía autoridad legal para imponer la multa de $10,000. Lo que es más, OCS tenía autoridad para imponer hasta una multa de **$20,000** a Triple-S ya que la falta por no pagar el procedimiento 0272-19499 es distinta e independiente del incumplimiento con contestar la querella administrativa en el término correspondiente.

Por lo tanto, resta dilucidar si la OCS actuó de forma arbitraria o irrazonable al imponer la multa. Un análisis acucioso del expediente revela que la actuación de la OCS fue razonable a la luz de las circunstancias del caso. Existe evidencia sustancial en el expediente que establece que Triple-S: (1) no presentó evidencia del pago de la reclamación ni de los intereses legales correspondientes, según fue requerida por la OCS en dos ocasiones; (2) no pagó el servicio prestado por el Hospital con un costo de $348 (procedimiento 0272-19499), ni los intereses legales; y (3) no contestó la querella que le presentó el Hospital del Maestro en el término dispuesto para ello. No se destruyó la presunción de corrección que cobija a toda determinación administrativa. Como menciona el profesor Fernández Quiñones, los tribunales sí examinan la razonabilidad de la multa, "como parte de la amplia discreción que los tribunales han

destacado que los organismos administrativos gozan en la selección de las medidas para cumplir con el fin de la legislación". D. Fernández Quiñones, op cit., pág. 109. Lo que no examinan es su proporcionalidad. La multa de $10,000 está más que justificada por el expediente administrativo.

Adoptar el principio de proporcionalidad, según enunciado en la sentencia del Tribunal de Apelaciones y en la Opinión disidente del compañero Juez Asociado señor Estrella Martínez, sería una carta blanca para que el Poder Judicial se inmiscuya indebidamente en la política pública que permea las decisiones de las agencias administrativas. Este Tribunal ha repetido hasta el cansancio que la política pública en esta jurisdicción la establece la Asamblea Legislativa. A.A.R., Ex parte, 187 DPR 835 (2013); Lozada Sánchez et al. v. JCA, 184 DPR 898, 923-924 (2012); Delgado, Ex parte, 165 DPR 170, 192-193 (2005). Mencionamos en Lozada Sánchez et al. v. JCA, supra, págs. 925-926:

> no intervendremos con las decisiones de las otras ramas de gobierno, a menos que la actuación de algunas de estas vaya en contra de la Constitución o alguna ley en específico. Adviértase, que a este Foro no le corresponde establecer la política pública que debe regir en las otras ramas de gobierno. El día que hagamos eso, quebrantaremos el principio de separación de poderes, firmemente arraigado en nuestro sistema de derecho. (Énfasis en el original.)

Imponer al Poder Judicial la obligación de examinar de novo la proporcionalidad de una multa implica que de hoy en adelante es lícito que los tribunales pasen juicio

sobre la política pública que llevó a la agencia a imponer la multa en cuestión.

Además de ser contrario a todos nuestros precedentes, el principio de proporcionalidad es impráctico y este caso lo demuestra. La OCS impuso una multa de $10,000, el Tribunal de Apelaciones la redujo a $1,000 y la Opinión disidente del compañero Juez Asociado señor Estrella Martínez la reduciría a $5,000. ¿Por qué en este caso una multa de $5,000 es más "proporcional" que los $10,000 que impuso la OCS o los $1,000 que fijó el foro apelativo intermedio? ¿Por qué en este caso una multa de $9,000 no es más "proporcional" que una de $1,000? ¿Sería "proporcional" una de $8,000? ¿Y una de $7,000? ¿Por qué no $6,000? ¿Qué factores concretos tendrían que evaluar los tribunales para examinar la "proporcionalidad"? Estas preguntas se dejaron sin responder.

Lo adjudicación correcta de este caso requiere que revoquemos al Tribunal de Apelaciones y confirmemos la multa que OCS impuso por estar justificada por la evidencia sustancial que obra en el expediente administrativo.

IV

Por los fundamentos antes expuestos, estoy conforme con la Sentencia de este Tribunal que emite un auto de certiorari, revoca la determinación del Tribunal de Apelaciones y confirma la decisión administrativa. La multa de $10,000 que impuso la OCS a Triple-S está

justificada por la evidencia sustancial que obra en el expediente administrativo.


                                        RAFAEL L. MARTÍNEZ TORRES
                                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Comisionado de Seguros de
Puerto Rico

    Peticionario

      v.                           CC-2013-873        Certiorari

Triple-S Salud, Inc.

    Recurrida

Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ a la cual se unen la Jueza Asociada SEÑORA PABÓN CHARNECO y los Jueces Asociados SEÑORES KOLTHOFF CARABALLO Y RIVERA GARCÍA

San Juan, Puerto Rico, a 5 de septiembre de 2014.

Este Tribunal tuvo la ocasión para reconocer que el principio de proporcionalidad es una herramienta que contribuye a ejercer cabalmente nuestra facultad revisora, en lo concerniente a la imposición de multas o sanciones administrativas. Empero, optó por descartar tal curso de acción, a pesar de que es nuestro deber evitar que las agencias administrativas abusen de su discreción o incurran en un proceder arbitrario y caprichoso en el referido ámbito.

Por estar convencido de que el principio de proporcionalidad está estrechamente vinculado a los diversos factores que los tribunales deben considerar en su función de revisar las

determinaciones administrativas, no me queda más que disentir del dictamen que emite esta Curia.

A continuación, exponemos el escenario fáctico y procesal que suscitó la controversia de epígrafe.

**I**

El 30 de junio de 2009, el Hospital del Maestro (Hospital) presentó ante la Oficina del Comisionado de Seguros de Puerto Rico (OCS o peticionaria) una solicitud de intervención en contra de Triple-S Salud (Triple-S o recurrida). En específico, el Hospital reclamó el pago de trescientos cuarenta y ocho dólares por unos servicios de salud prestados a una paciente.

Realizada la correspondiente investigación, el 17 de febrero de 2011, la OCS emitió una Orden imputándole a Triple-S haber infringido varias disposiciones, a saber: los Arts. 2.130(1),[1] 30.030[2] y 30.070[3] del Código de Seguros de Puerto Rico, 26 LPRA secs. 245(1), 3002 y 3006; los Arts. 4(B)[4] y (C)(1),[5] 8[6] y 11[7] de la Regla Núm.

---

[1] Establece la obligación que tiene toda persona que sea investigada de cooperar activamente con la pesquisa. Véase, 26 LPRA sec. 245(1).

[2] Dispone que el asegurador está obligado a pagar la reclamación dentro del término de cincuenta días, a partir de la fecha en que la reciba. Véase, 26 LPRA sec. 3002.

[3] En lo pertinente, establece que cualquier reclamación que no sea pagada dentro del término dispuesto devengará intereses. Véase, 26 LPRA sec. 3006.

[4] En lo que atañe a la controversia de epígrafe, señala que el plazo de cincuenta días (o el acordado entre las partes) para pagar una reclamación empieza a transcurrir cuando ésta se reciba. Normas para regular el
(continúa...)

73 del Reglamento del Código de Seguros; y el Art. 6[8] de la Regla I-A del mencionado Reglamento.

En lo pertinente, la OCS le atribuyó a Triple-S lo siguiente: (1) no contestar en el término establecido la querella incoada por el Hospital; (2) no pagar por el servicio prestado por el Hospital que asciende a una suma de trescientos cuarenta y ocho dólares; y (3) no presentar evidencia del pago de la reclamación ni de los intereses legales correspondientes. Como corolario de lo anterior y bajo el fundamento de que Triple-S obstruyó la investigación en cuestión, la OCS le impuso a la recurrida una multa administrativa de diez mil dólares. Asimismo, le ordenó pagar la cantidad que reclamaba el

---

pago puntual de reclamaciones a los proveedores de servicios de salud, Reglamento Núm. 6559 de 8 de enero de 2003. Este Reglamento fue enmendado por el Reglamento Núm. 8197 de 11 de mayo de 2012.

[5]En síntesis, dispone que luego de recibir una reclamación, el asegurador deberá pagar la totalidad de ésta dentro del término dispuesto. Reglamento Núm. 6559, *supra.*

[6]En lo pertinente, establece que el asegurador que no cumpla con el término para pagar vendrá obligado al pago de intereses. Reglamento Núm. 6559, *supra.*

[7]En lo que concierne al presente caso, señala que todo asegurador deberá establecer un procedimiento para atender las querellas. Éstas deberán ser resueltas en un término no mayor de treinta días calendario. Reglamento Núm. 6559, *supra.*

[8]Establece, en síntesis, que toda persona investigada deberá cooperar plenamente con la pesquisa que realice el Comisionado. Procedimientos de Investigación, Reglamento Núm. 5266 de 3 de julio de 1995. Este Reglamento fue enmendado por el Reglamento Núm. 8077 de 26 de septiembre de 2011.

Hospital por los servicios prestados no pagados, conjuntamente con los intereses legales correspondientes.

A raíz de ello, Triple-S solicitó una vista administrativa ante la OCS. Ésta fue celebrada el 9 de mayo de 2011. Luego de examinada la prueba y de los trámites de rigor, el 15 de septiembre de 2011, el Comisionado de Seguros (Comisionado) emitió una Resolución mediante la cual confirmó la Orden dictada. En lo pertinente, el Comisionado realizó determinaciones de hechos entre las que se encuentran las siguientes: (1) mediante la Carta PP-383 de 22 de octubre de 2009, la OCS le requirió a Triple-S que en el término de quince días sometiera evidencia del pago de la reclamación, en conjunto con los intereses legales correspondientes y la contestación a la querella radicada por el Hospital;[9] (2) Triple-S contestó el requerimiento, pero no sometió la evidencia solicitada; (3) trascurrido el término de quince días dispuesto y sin que la OCS concediera un término adicional, el 2 de marzo de 2010, Triple-S presentó su contestación solicitando el archivo y cierre de la investigación; (4) mediante la Carta PP-814 de 18 de junio de 2010, la OCS le señaló a Triple-S que aún no había sometido la información solicitada en la Carta PP-383. Por tanto, le requirió cumplir cabalmente con lo ordenado en la Carta PP-383, no más tarde del 28 de junio

---

[9]También se le apercibió a Triple-S que no contestar en el término establecido, constituiría una obstrucción al poder de investigación que la ley le confiere al Comisionado de Seguros.

de 2010;[10] (5) el 30 de junio de 2010, posterior al término concedido, Triple-S presentó su contestación a la Carta PP-814; (6) a la fecha de la vista administrativa, Triple-S tampoco había pagado la reclamación, ni los intereses legales correspondientes. Oportunamente, Triple-S presentó una solicitud de reconsideración, pero fue declarada sin lugar por el foro administrativo.

En desacuerdo, Triple-S recurrió ante el Tribunal de Apelaciones mediante recurso de revisión administrativa. Luego de varios incidentes procesales, el 31 de mayo de 2013, el foro apelativo intermedio dictó Sentencia mediante la cual confirmó la Resolución de la OCS en todos sus extremos. Inconforme con el dictamen, Triple-S presentó una moción de reconsideración. Mediante Resolución emitida el 2 de julio de 2013, el Tribunal de Apelaciones modificó el dictamen de la OCS a los fines de reducir la multa impuesta a mil dólares. Ello, según dictaminó el foro judicial, para que la referida multa "refleje una proporcionalidad equitativa a la falta incurrida y se evit[e] una injusticia".[11]

Ante el proceder del foro apelativo, la OCS solicitó reconsideración, pero fue declarada no ha lugar. Así las cosas, la peticionaria acudió ante esta Curia mediante

---

[10]Nuevamente, se le apercibió que no cumplir con el requerimiento dentro del término concedido, constituiría una obstrucción al poder de investigación del Comisionado de Seguros y un incumplimiento de una orden del mencionado funcionario.

[11]Resolución del Tribunal de Apelaciones de 2 de julio de 2013, Apéndice, págs. 554-555.

recurso de *certiorari* y señaló la comisión de los siguientes errores:

> Erró y abusó de su discreción el Tribunal de Apelaciones al sustituir el criterio de la OCS por el suyo propio y, consecuentemente, reducir la multa administrativa impu[es]ta a Triple-S Salud, Inc. por haber ésta cometido varias infracciones al Código de Seguros y su Reglamento, bajo el único fundamento de que "refleje una proporcionalidad equitativa a la falta incurrida y se evit[e] una injusticia". Con dicha actuación, el foro recurrido privó al Comisionado de Seguros de su facultad de determinar la sanción adecuada para poner en vigor las disposiciones del complicado esquema regulador que establece el Código de Seguros.

> Erró y abusó de su discreción el Tribunal de Apelaciones al no brindarle deferencia a la determinación administrativa respecto a la multa impuesta haciendo completa abstracción a los precedentes judiciales en torno al alcance de la revisión judicial de las determinaciones administrativas mediante la cual se imponen sanciones. Tal jurisprudencia sostiene firmemente que la revisión judicial de la facultad de las agencias para imponer sanciones "no será para determinar si la sanción impuesta guarda proporción con la conducta por la cual se impone la sanción ni si la misma es demasiado fuerte", ya que tal evaluación le corresponde a la propia agencia que por su experiencia especializada es quien está en mejor posición para conceder los efectos de una violación a los intereses protegidos.

El 28 de febrero de 2014, emitimos una Resolución mediante la cual le ordenamos a Triple-S mostrar causa por la cual no debíamos revocar el dictamen recurrido. Ambas partes comparecieron y, de nuestra parte, solo resta exponer los fundamentos y el razonamiento que sustenta este disenso.

**II**

Como es sabido, en nuestro ordenamiento jurídico la industria del negocio de seguros es un sector revestido de profundas consideraciones de política pública. Por tal motivo, el Estado tiene un interés legítimo en reglamentarlo de manera rigurosa. Particularmente, el Comisionado de Seguros es el funcionario llamado a reglamentar y fiscalizar este sector. Por ello, se le han conferido amplios poderes y facultades para velar por el cumplimiento minucioso de las disposiciones del Código de Seguros y su Reglamento.

En lo pertinente al asunto ante nuestra consideración, el Código de Seguros le delega al Comisionado la potestad para "llevar a cabo las investigaciones y exámenes que considere necesarias para asegurar el cumplimiento de las disposiciones del Código, su [R]eglamento y las órdenes que ha emitido, y para obtener toda la información útil a la administración de éstas".[12] En el ejercicio de tal función, el Comisionado tiene autoridad para utilizar aquellos mecanismos que estime necesarios.

A su vez, este funcionario tiene el poder de adjudicar controversias vinculadas a infracciones al Código o a su Reglamento. En lo que atañe a la controversia de autos, la Ley Para el Pago Puntual de

---

[12] 26 LPRA sec. 235(12).

Reclamaciones a Proveedores de Servicios de Salud,[13] le delegó al Comisionado jurisdicción original para atender y resolver las reclamaciones que surjan entre los proveedores de servicios y las aseguradoras. En síntesis, esta Ley creó el Capítulo 30 del Código de Seguros y encarna la política pública del Estado con el propósito de promulgar las normas necesarias para garantizar y regular el pago de las reclamaciones de proveedores de servicios de salud a las aseguradoras.

De igual forma, con el propósito de evitar transgresiones al aludido Código o a su Reglamento, se le ha concedido al Comisionado la **autoridad para imponer multas administrativas o sanciones.**[14] A esos efectos, el Art. 2.130 del Código de Seguros dispone que "[t]oda persona que obstruya, ayude o contribuya a la obstrucción, dilación o entorpecimiento de la investigación podrá ser sancionada con una multa no menor de quinientos ($500) ni mayor de diez mil dólares ($10,000) […]".[15] Esto, ya que el Código expresamente establece que toda persona que sea investigada debe facilitar la pesquisa y hacer accesible al Comisionado

---

[13]Ley Núm. 104 de 19 de julio de 2002, 26 LPRA sec. 3001 *et seq.*

[14]Tales penalidades o sanciones pueden ser impuestas a iniciativa del Comisionado o después de presentada una querella por un proveedor participante. Véase, 26 LPRA secs. 235, 3007.

[15]26 LPRA sec. 245.

todos aquellos documentos que estén bajo su poder y sean pertinentes a la materia investigada.[16]

**III**

**A.**

Es norma reiterada que las determinaciones de las agencias administrativas gozan de una presunción de corrección y regularidad. Por tanto, los foros judiciales deben otorgarle deferencia a los dictámenes emitidos por las agencias con respecto a las leyes y los reglamentos que administran, y no descartar libremente sus conclusiones e interpretaciones. Asoc. Fcias v. Caribe Specialty *et al.* II, 179 DPR 923, 940 (2010); JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 186 (2009); Cruz v. Administración, 164 DPR 341, 357 (2005). Ello, pues, en nuestro ordenamiento rige la norma de la deferencia a las decisiones administrativas. Como sabemos, esta norma ha sido estatuida en la Ley de Procedimiento Uniforme del Estado Libre Asociado de Puerto Rico[17] (LPAU) y desarrollada mediante pronunciamientos jurisprudenciales.

A tales efectos, la función determinante de la revisión judicial es asegurar que las agencias administrativas procedan acorde con el poder que se les ha delegado y de manera compatible con la política

---

[16]Íd.

[17]Ley Núm. 170 de 12 de agosto de 1988, 3 LPRA sec. 2101 *et seq.*

legislativa.[18] Así, la revisión judicial de las decisiones administrativas debe circunscribirse a examinar si la actuación de la agencia fue arbitraria, ilegal, o tan irrazonable que constituya un abuso de discreción. Asoc. Fcias v. Caribe Specialty *et al.* II, *supra*, pág. 941; Calderón Otero v. CFSE, 181 DPR 386, 396 (2011); JP, Plaza Santa Isabel v. Cordero Badillo, *supra*, pág. 187.

Es doctrina firmemente establecida que la revisión judicial de los dictámenes administrativos es distinguible si se trata de determinaciones de hechos o si se trata de conclusiones de derecho. De esta forma, las determinaciones de hechos de las agencias serán sostenidas si están fundamentadas en evidencia sustancial que obra en el expediente de la agencia.[19] Este tipo de evidencia la hemos definido como aquella evidencia "relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". Rebollo v. Yiyi Motors, 161 DPR 69, 77 (2004); Misión Ind. PR v. J.P., 146 DPR 64, 131 (1998). Además, la norma de prueba sustancial se sostiene en la premisa de que son agencias las que producen y determinan los hechos en los procesos administrativos y no los foros judiciales.[20]

---

[18]Véase, D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Ed. Forum, 2013.

[19]3 LPRA sec. 2175.

[20]Fernández Quiñones, op. cit., pág. 711.

Por el contrario, las conclusiones de derecho pueden ser revisadas en todos sus aspectos.[21] Empero, los tribunales no pueden descartar libremente, sin más, las determinaciones e interpretaciones de las agencias administrativas. En ese sentido, solo podrán sustituir el criterio de la agencia cuando no puedan hallar un fundamento racional que explique o justifique el dictamen administrativo. Asoc. Fcias v. Caribe Specialty *et al.* II, *supra*; JP, Plaza Santa Isabel v. Cordero Badillo, *supra*, pág. 187. De igual forma, hemos señalado que si en la función revisora los tribunales determinan que el foro administrativo quebrantó directamente garantías constitucionales fundamentales o procedió de manera arbitraria o caprichosa, de ordinario, los foros judiciales pueden intervenir y sustituir el criterio de la agencia por el suyo. Fac. C. Soc. Aplicadas, Inc. v. CES, 133 DPR 521, 533 (1993).

En fin, consecuentemente esta Curia ha expresado que la revisión judicial de las decisiones de las agencias, de ordinario, suele limitarse a examinar si: (1) el remedio concedido por la agencia fue apropiado o razonable; (2) las determinaciones de hecho realizadas están sostenidas por evidencia sustancial que obra en el expediente; y (3) las conclusiones de derecho fueron las

---

[21] En aquellos casos en que se presenten controversias mixtas de hecho y de derecho, los foros judiciales deben examinar si el dictamen de la agencia constituye un ejercicio razonable y si es cónsono con el propósito legislativo.

correctas. <u>Asoc. Fcias v. Caribe Specialty *et al.* II</u>, *supra*, pág. 940.

### B.

Dentro de las amplias facultades conferidas a las agencias administrativas, se encuentra el poder para imponer penalidades: multas y sanciones. Reiteradamente, se ha validado la delegación de este poder a los foros administrativos con el fin de poner en vigor las leyes y reglamentos aplicables y lograr los objetivos de la agencia. Conforme las disposiciones de la LPAU, "[t]oda violación a las leyes que administran las agencias o a los reglamentos emitidos al amparo de las mismas podrá ser penalizada con multas administrativas que no excederán de cinco mil dólares ($5,000) por cada violación".[22] Adviértase que el referido esquema legal establece que si la ley habilitadora permite la imposición de una penalidad administrativa mayor a la establecida, la agencia está facultada para imponer tal penalidad.

En su función revisora, los tribunales le han reconocido discreción a las agencias en cuanto a la selección de las medidas que les auxilien en su función de velar por el cumplimiento de las leyes y reglamentos cuya administración e implantación se les ha delegado. Por su experiencia especializada, el foro administrativo es el que se encuentra en mejor posición de conocer las

---

[22] 3 LPRA sec. 2201.

consecuencias de las infracciones a los intereses que resguarda y, por ende, de determinar la penalidad para sancionar tal violación. Ahora bien, esa discreción debe reconocerse siempre que las agencias actúen dentro del marco de su conocimiento especializado y de la ley. Com. Seg. P.R. v. PRIA, 168 DPR 659, 667 (2006); Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 DPR 425, 438 (1997).

Hemos sido diáfanos en señalar que el conocimiento especializado o el manejo de cuestiones técnicas no proveen una carta en blanco para que la agencia actúe caprichosa, arbitraria o irrazonablemente. Así, los tribunales deben brindar considerable deferencia siempre que la penalidad administrativa esté fundamentada en evidencia sustancial, no constituya una actuación *ultra vires* y **tenga una relación razonable con los actos que se quieren prohibir**. Comisionado v. Prime Life, 162 DPR 334, 341 (2004); OEG v. Román, 159 DPR 401, 417 (2003); Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., *supra*, pág. 439. Asimismo, esa discreción de las agencias para imponer determinadas penalidades debe sostenerse mientras **no procedan arbitraria o caprichosamente o abusen de la discreción que se les ha conferido**. Com. Seg. P.R. v. PRIA, *supra*, pág. 668; Com. Seg. P.R. v. Antilles Ins. Co., 145 DPR 226, 234 (1998). Es decir, si no existe prueba en el expediente que **justifique** la imposición de la sanción o, por el contrario, existe evidencia que menoscabe el fundamento que sostiene la determinación de

la agencia, los tribunales deben revisar la decisión administrativa para impedir actuaciones caprichosas. Ello, toda vez que los foros judiciales "tienen que evitar que **los administradores actúen ilegalmente o cometan arbitrariedades al imponer sanciones**". Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., *supra*, pág. 440. (Énfasis suplido).

### C.

Como señalamos, es obligación de los foros judiciales asegurar que la penalidad impuesta no transgreda los límites de lo legal ni constituya un claro abuso de discreción. Contrario a lo que razona una Mayoría de este Tribunal, entendemos que para ejercer tan trascendental función, los tribunales debemos tener potestad para revisar si las penalidades administrativas guardan justa correspondencia con la infracción por la cual se impone la sanción.

Entonces, si bien sostenemos que la facultad revisora de las determinaciones administrativas no es ilimitada, entendemos que los tribunales no deben ver circunscrita su autoridad de examinar si la penalidad administrativa es equilibrada con la conducta que se imputa. Por ello, a diferencia de lo que rechaza una Mayoría de este Tribunal, consideramos que a los tribunales nos compete evaluar la proporcionalidad entre penalidad y falta, así como la determinación de si la sanción es demasiado fuerte o excesiva en relación a la conducta imputada. Ello, pues, soy del criterio de que

una penalidad excesiva, demasiado fuerte o que no guarde proporción con la actuación incurrida, **puede acarrear abuso de discreción o conllevar actuaciones caprichosas o arbitrarias por parte del foro administrativo**, siendo todos éstos, factores a considerar cuando se revisan judicialmente las determinaciones de las agencias.

De la misma forma, considero que el aspecto de la proporcionalidad se **remite al criterio de la razonabilidad**, por lo que está estrechamente atado a este último. Sin duda, una multa desproporcionada quebranta los límites de lo razonable. Tal como afirma el profesor Fernández Quiñones, la razonabilidad de la multa es fundamental para que en la revisión judicial se reconozca la validez de la acción administrativa.[23] Al reconocer que la razonabilidad de la actuación de la agencia constituye uno de los criterios a considerar cuando se revisan sus determinaciones, la proporcionalidad también debe ser parte de los aspectos a examinar en la revisión judicial. En consecuencia, sostenemos que no es deber de los tribunales brindarle una extrema deferencia, sin más, a las agencias administrativas en cuanto al asunto de proporcionalidad entre la penalidad impuesta y la infracción incurrida. Este aspecto también está sujeto a revisión.

**IV**

---

[23]Fernández Quiñones, op. cit., pág. 109.

La Mayoría de este Tribunal pasa por alto que en muchos ordenamientos jurídicos se reconoce que el examen de la proporcionalidad debe jugar un rol trascendental en la revisión judicial de las decisiones administrativas, en cuanto a las penalidades se refiere. Dentro del ámbito del Derecho Administrativo, este cardinal principio ha sido definido como *la observancia o inobservancia de la debida adecuación entre la gravedad de la actuación y la sanción aplicada.*[24] En virtud del mencionado principio, se establece que todas las medidas que afectan los derechos de los seres humanos deben ser *proporcionales* y *razonables;*[25] reflejando, así, el estrecho vínculo que existe entre la proporcionalidad y la razonabilidad, tal y como lo expusimos.

Por tanto, opino que nuestro ordenamiento también debe ser receptivo a la aplicación del principio de proporcionalidad en la esfera del Derecho Administrativo. Su introducción a nuestro ordenamiento no descarta la deferencia que los foros judiciales deben otorgarle a las acciones administrativas. Más bien, constituye un valioso instrumento de control al poder discrecional de la agencia; una garantía jurídica frente al ejercicio de las

---

[24]J. López González, *El principio de proporcionalidad en el Derecho Administrativo.* Disponible en: http://revistasonline.inap.es/index.php/CDP/article/download/513/568.

[25]J. Cianciardo, *The Principle of Proportionality: the Challenges of Human Rights*, 3 J. Civ. L. Stud. 177 (2010).

facultades administrativas. Entendemos que este principio, utilizado en la mayoría de las materias jurídicas, se ha convertido en un recurso fundamental ya que "se configura como un instrumento eficaz en el control jurídico ... de las decisiones discrecionales".[26]

Ante ello, consideramos que existen actuaciones administrativas, en lo que concierne a la imposición de penalidades, que deben quedar sometidas a la observancia del principio de proporcionalidad. Esta observancia se concreta con la exigencia de que este tipo de penalidad sea adecuada, necesaria y, sobre todo, equilibrada. Con ello, se reconoce la potestad de los tribunales para examinar la necesaria correlación que debe existir entre la infracción cometida y la sanción administrativa.

En contraposición a lo que la Mayoría de este Tribunal descarta, sin más, la observancia del principio de proporcionalidad propicia una revisión judicial responsable que permite garantizar que en la imposición de una penalidad administrativa hayan mediado los criterios de razonabilidad, así como la ausencia de actuaciones arbitrarias o caprichosas.

Como expusimos, revisar la proporción entre penalidad e infracción contribuye, precisamente, a efectuar de forma cabal nuestra función revisora de determinar si una multa es irrazonable.

---

[26] I. Perelló Doménech, *El principio de proporcionalidad y la jurisprudencia constitucional*, pág. 69. Disponible en: dialnet.unirioja.es/descarga/articulo/174691.pdf.

**V**

En el caso de marras, no hay controversia con respecto a si las infracciones imputadas a Triple-S se cometieron. El Tribunal de Apelaciones confirmó el dictamen de la OCS sobre este particular y ninguna de las partes lo disputa ante este Tribunal.

Ahora bien, como expusimos, se cuestiona ante nos la facultad del foro apelativo intermedio para reducir, en un noventa por ciento, la multa administrativa impuesta. Según alega la OCS, la determinación del foro judicial tuvo el efecto de despojar al Comisionado de su facultad de vigilar porque se cumpla con el alto interés público que involucra la industria de seguros. A su vez, sostiene que la actuación del mencionado foro privó a este funcionario de su poder de determinar la sanción adecuada cuando se quebrantan las disposiciones del Código de Seguros y su Reglamento. Para la OCS, el dictamen del foro apelativo fue escueto e incompleto, y contrario al principio de amplia discreción otorgada a las agencias para imponer penalidades.

Además, la OCS arguye que la actuación del Tribunal de Apelaciones contraviene los pronunciamientos jurisprudenciales de esta Curia con respecto a la revisión judicial. Finalmente, en cuanto al asunto medular de la reducción de la multa, la OCS sentenció que: "para un regulado como Triple-S, la multa administrativa de $1,000.00 **no resulta un disuasivo suficiente** para evitar que incurra nuevamente en unas

faltas, como las que aquí nos ocupan, las cuales se consideran de gran seriedad para la OCS […]".[27]

Por su parte, Triple-S señala que la OCS impuso la multa de diez mil dólares sin llevar a cabo un análisis de las razones que motivaron tal penalidad. Sostiene que el foro administrativo omitió por completo todo análisis particularizado sobre la conducta atribuida. Asimismo, la recurrida aduce que medió ausencia de proporcionalidad, pues la cuantía impuesta por la OCS no guarda relación equitativa con la falta que se le imputó como consecuencia de no pagar a tiempo una reclamación de trecientos cuarenta y ocho dólares. Además, Triple-S alega que la OCS incurrió en trato desigual y discriminatorio al castigarla arbitrariamente, por ser una aseguradora con alto volumen de negocios.

Conforme indicáramos, la OCS le impuso a Triple-S una multa administrativa de diez mil dólares. Luego de varios incidentes procesales, esa multa fue reducida a mil dólares por el Tribunal de Apelaciones bajo el argumento de que no existía una proporción adecuada entre la penalidad y la falta incurrida. Distinto al dictamen emitido por una Mayoría de este Tribunal, avalamos cualitativa pero no cuantitativamente el curso de acción del foro apelativo intermedio, pues entendemos que no incidió al efectuar la reducción de la multa al amparo del fundamento señalado. Nos explicamos.

---

[27]Petición de *certiorari*, pág. 4. (Énfasis suplido).

A tenor con la normativa expuesta, entendemos que el foro apelativo intermedio, en el ejercicio de su función revisora, actuó correctamente bajo las circunstancias de este caso, al examinar si la penalidad aplicada era equilibrada en relación con las infracciones incurridas por Triple-S. De la Resolución recurrida podemos colegir que el aludido foro analizó la multa administrativa impuesta y a base de su proporción con las faltas incurridas, concluyó que no era una actuación razonable de la agencia. Nuestro examen nos lleva a sostener que el proceder de la agencia ante los hechos particulares de este caso, sin duda, excedió los límites de lo razonable al aplicar una multa claramente desproporcionada en relación con lo imputado. A todas luces, la actuación de la agencia al escoger imponer una multa por la cantidad descrita discurre en el terreno de lo caprichoso y lo arbitrario. Esto, toda vez que del monto de alternativas disponibles la agencia seleccionó la cantidad más onerosa, sin esbozar alguna justificación razonable para ello.

Ciertamente, una multa de diez mil dólares no guarda un vínculo proporcional con lo imputado a Triple-S. Esto es, una deuda de trescientos cuarenta y ocho dólares, unido al incumplimiento reiterado de replicar una reclamación dentro del término requerido, a no presentar evidencia de pago y no acatar las órdenes emitidas por el Comisionado, no alcanza una gravedad tal que deba imponérsele a la recurrida el tope de la multa que provee

el Código de Seguros. Las circunstancias particulares del caso no justifican tal curso de acción. De hecho, las mismas expresiones del Comisionado al aducir que una multa de mil dólares no representaría un verdadero disuasivo para Triple-S, nos llevan a concluir que la multa impuesta por la agencia fue desproporcionada, reflejando, como señalamos, una acción arbitraria, caprichosa e irrazonable por parte del Comisionado. Esto, indiscutiblemente, provoca que no confluyan las condiciones para otorgar y sostener la deferencia.

Ante esa realidad, este Tribunal debió examinar y sopesar la justa proporción que debe caracterizar el vínculo entre falta y penalidad. Sin embargo, la Mayoría optó por la *deferencia desproporcional.* No podemos desviar la mirada y pasar por alto que en una multa administrativa desproporcionada pueden resguardarse acciones que no podemos tolerar.

Entonces, aunque sostenemos que el Tribunal de Apelaciones tenía facultad para examinar el aspecto de la proporción, a la luz de los fundamentos expuestos modificaríamos su dictamen en el ámbito cuantitativo. Al examinar detenidamente los documentos que obran en autos, así como las disposiciones del Código de Seguros y su Reglamento, encontramos que una penalidad de mil dólares tampoco es cónsona con lo imputado a Triple-S. Llegamos a esta determinación, pues de la evidencia que obra en el expediente se desprende diáfanamente que la recurrida infringió varias disposiciones del Código de Seguros y su

Reglamento, y, además, incurrió en conducta temeraria al incumplir con la exigencia de cooperar con la pesquisa realizada por la OCS. En vista de que estas acciones desafían abiertamente el gran interés público que rige la compleja industria de seguros, no podemos avalar la imposición de una multa de mil dólares. Esta cantidad también resulta desproporcionada en comparación con las acciones de Triple-S.

Bajo este escenario, modificaríamos a cinco mil dólares la cuantía de la multa administrativa impuesta como corolario de las faltas señaladas y probadas por el Comisionado, así como de la conducta presentada por Triple-S al incumplir reiteradamente con las órdenes de este funcionario bajo el apercibimiento de las consecuencias que ello acarreaba. Nuestro minucioso análisis del expediente nos lleva a concluir que una multa por esta suma es la penalidad más adecuada, necesaria y equilibrada en relación al proceder de Triple-S. Ello, para que prevalezca la política pública legislada que vincula a la industria de seguros, para que nuestra función revisora cumpla un propósito en la búsqueda de solución a los problemas planteados y, más aún, para evitar vindicar una acción arbitraria y caprichosa que no estuvo enmarcada en la razonabilidad.

En fin, con los fundamentos expuestos en este disenso no socavamos el rol fiscalizador del Comisionado ni mucho menos su potestad para determinar razonable y objetivamente las penalidades administrativas adecuadas.

Tampoco cabe hablar de "análisis de *novo*" y de interferencias con la política pública de las agencias en el contexto de la revisión del aspecto de la proporcionalidad, por lo que señalamientos sobre el particular adolecen de méritos. Más bien, el examen de la debida proporción entre la penalidad e infracciones cometidas, para así cumplir con nuestro rol de evitar que las agencias administrativas actúen arbitraria, irrazonable o caprichosamente o abusen de su discreción, exige un dictamen como el formulado en este disenso.

**VI**

Al amparo de los fundamentos que anteceden y ante la opción de la Mayoría de ampararse en la *deferencia desproporcional*, que limita irrazonablemente el acceso a los tribunales para atender reclamos contra actuaciones administrativas arbitrarias, caprichosas o irrazonables, disiento.

                                              Luis F. Estrella Martínez
                                                    Juez Asociado